IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

| | | |
|---|---|---|
| FIDELITY BANK OF TEXAS, a Texas State Bank, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Case No. ___________________ |
| | § | |
| U.S. EAGLE FEDERAL CREDIT UNION, | § | |
| | § | |
| Defendant. | § | |

**ORIGINAL COMPLAINT**

COMES NOW Plaintiff, Fidelity Bank of Texas ("FBOT"), by its counsel Gordon Davis Johnson Shane & Snider P.C. (Harrel Davis), and brings this Complaint for Breach of Contract against Defendant U.S. Eagle Federal Credit Union ("U.S. Eagle"), and alleges as follows:

**THE PARTIES**

1. Plaintiff FBOT is a Texas state commercial bank.

2. Defendant U.S. Eagle is a federal credit union based in Albuquerque, New Mexico and can be served with process through its authorized agent at 3939 Osuna Rd. NE, Albuquerque, New Mexico 87109, or wherever it may be served in accordance with the Federal Rules of Civil Procedure.

**JURISDICTION AND VENUE**

3. The Court has subject matter jurisdiction under 28 U.S.C. §1332.

4. There is complete diversity of citizenship as to all parties.

5. The amount in controversy exceeds the sum of $75,000, exclusive of interests and costs.

6. Venue is proper in this Court as the acts committed by Defendant complained of by Plaintiff took place in New Mexico.

## FACTUAL ALLEGATIONS

7. In 2023, it appears that Defendant started the process of originating clearly risky and problematic loans, obtaining USDA guarantees on those loans, and then selling them at a premium to third-party lenders in order to raise capital to purchase other banks. At least some of those loans were guaranteed by the United States Department of Agriculture ("USDA") pursuant to its Rural Development OneRD Lending Program (the "OneRD Program"). The acquisition target at that point was Southwest Capital Bank located in Albuquerque, New Mexico.

8. The OneRD Program is a self-directed program and the OneRD Program did not perform independent third-party reviews of the loans made by Defendant. Defendant was allowed to make the loans without USDA third-party review because it had previously qualified as a preferred lender.

9. As part of this scheme, Defendant, after making the risky loans and obtaining the USDA guarantee, would sell a portion of those loans to innocent and unsuspecting third-party lenders in order to bolster its own financial statement. While doing so, Defendant would provide insufficient and/or misleading information regarding the loans being sold.

10. The USDA guaranteed loans were sold to the innocent third-party lenders at a premium because of the USDA guarantee as well as the perceived quality of the loans being sold.

11. Since Defendant was pushing to raise its capital and was offloading the loans (i.e., a pump and dump scheme), via assignments to third parties such as Plaintiff without regard for their quality, Defendant did not care about the quality of the loans it was originating and selling.

12. On December 11, 2023, Defendant made a loan to Sumter Propco, LLC and Sumter Opco, LLC, South Carolina companies, for $17,550,000.00 (the "Loan"). The USDA guaranteed $14,040,000.00 of the Loan.

13. In January 2024, Plaintiff purchased $5,054,000.00 of the Loan and loan guarantee. The closing of the purchase closed in February 2024. Plaintiff paid $5,668,004.16 for its portion of the Loan. Of that, $600,210.00 represented the premium Plaintiff paid because of the representations regarding the quality of the Loan.

14. The Loan was subject to: (i) the Assignment Guarantee Agreement dated January 25, 2024, by and among Defendant, USDA, and FHN Financial Capital Markets ("FHN"), subsequently assigned by FHN to Plaintiff (the "Assignment Guarantee Agreement"); and (ii) the Loan Note Guarantee dated December 11, 2023, issued by the USDA ("Loan Note Guarantee"). Although the USDA has repaid the guaranteed principal of the Loan to Plaintiff in satisfaction of its guarantee obligation, that repayment did not compensate Plaintiff for the premium it paid or the future interest earnings it lost as a result of Defendant's conduct.

15. Very shortly after the acquisition, it became clear that the loans were troubled ones. In fact, in August 2024, Defendant's internal documents reflected that there were discussions about problems that existed with the Loan long before a portion of it was sold to Plaintiff.

16. As stated, Plaintiff also paid a premium of $600,210.00 in connection with the Loan, representing consideration for its interest therein. Because the Loan was repaid early and without any prepayment penalty, Plaintiff is realizing a loss on the unamortized portion of that premium. The unamortized premium currently totals $443,905.28.

17. The Loan Note Guarantee obligated Defendant to service the Loan in the same manner as a "reasonably prudent lender would perform in processing or servicing (including liquidation) its own portfolio of Loans that are not guaranteed." Defendant failed to meet that standard. Specifically, as demonstrated by the USDA's own findings and the Loan servicing record:

- The USDA rejected U.S. Eagle's request for a modification on the grounds, citing

in part that "5 months passed until U.S. Eagle submitted a servicing plan."

- Borrower had not paid property taxes for 2024 or 2025. U.S. Eagle failed to notify Plaintiff of Borrower's default in a timely manner and failed to diligently press the Borrower to cure, as cited by the USDA as grounds for rejecting U.S. Eagle's modification request.
- Plaintiff believes that Defendant made material misrepresentations and/or omitted material information in connection with the underwriting of the Loan, upon which Plaintiff relied to its detriment in purchasing its interest in the Loan.
- Plaintiff understands that Borrower had additional non-guaranteed loans with Defendant that are also in workout, raising the issue of whether Defendant permitted or even encouraged the Borrowers to prioritize repayment of non-guaranteed loans.

18. As a result of Defendant's failure to appropriately service the Loan, among others, the USDA revoked Defendant's license and barred it from future participation on the Rural Development OneRD Lending Program. USDA took this action due to "significant findings of noncompliance with the regulatory requirements of the OneRD Program." In fact, at the time it terminated Defendant from the OneRD Program, it stated that it "has absolutely no tolerance for the irresponsible and noncompliant actions of these lenders."

19. The damage caused to Plaintiff is much greater than the unamortized portion of the premium it paid for its portion of the Loan. It also lost future net interest earnings in the amount of $2,437,004.84.

**COUNT 1 – BREACH OF CONTRACT**

20. Pursuant to the Assignment Guarantee Agreement, the Loan Note Guarantee and other related assignment documents, Defendant represented and warranted that the underlying

Loan was originated and underwritten in compliance with the requirements of the USDA's OneRD Program and was of a quality that would qualify for a USDA loan guarantee. It was not.

21. Defendant breached its contractual obligations under the Assignment Guarantee Agreement and related assignment documents by failing to disclose material issues with the Loan when it assigned a portion of the Loan to Plaintiff.

22. Further, Defendant failed to review and underwrite the Loan in accordance with the requirements of the Loan Note Guarantee and the OneRD Program, including but not limited to performing adequate due diligence on the creditworthiness of the borrowers and the viability of the underlying collateral.

23. Further, Defendant failed to service the Loan in accordance with the requirements of the Loan Note Guarantee.

**COUNT 2 – BREACH OF DUTY OF GOOD FAITH AND FAIR DEALING**

24. As a result of the above, Defendant breached its covenant of good faith and fair dealing with regards to the sale of a portion of the Loan to Plaintiff as well as the servicing of the Loan. This conduct includes, but is not limited to, Defendant's failure to disclose known loan quality issues prior to the assignment, and its subsequent failure to diligently service the Loan, each of which, among other acts and omissions, deprived Plaintiff of the benefit of its bargain, including the expected income stream and the value of the USDA guarantee for which Plaintiff paid a premium.

**COUNT 3 – FRAUD**

25. Upon information and belief, Defendant was aware, at the time it made the Loan, that it was of such poor quality that it did not qualify for the USDA's OneRD Program. Despite this knowledge, Defendant marketed the Loan for sale to Plaintiff, representing through the Assignment Guarantee Agreement, the Loan Note Guarantee, and related offering materials that

the Loan qualified for the OneRD Program and that the USDA guarantee was valid and enforceable. Those representations were false and were made with the intent to induce Plaintiff to purchase its interest in the Loan. Plaintiff relied on those representations and suffered damages as a result.

## DAMAGES

26. Plaintiff has been damaged in an amount not less than $443,905.28, representing the unamortized portion of the premium Plaintiff paid in direct reliance on Defendant's obligation to fulfill the standard of care required under the Loan Note Guarantee.

27. In addition, as a result of the conduct of Defendant, Plaintiff has suffered damages for loss of future earnings it would have received over the remaining term of the Loan, in an amount not less than $2,437,004.84, subject to further calculation and proof at trial.

## ATTORNEYS' FEES

28. Plaintiff also sues Defendant for its reasonable and necessary attorneys' fees, prejudgment and post-judgment interest, and costs of court.

## REQUESTED RELIEF

**WHEREFORE**, Plaintiff, Fidelity Bank of Texas, respectfully requests that Defendant, U.S. Eagle Federal Credit Union, be cited to appear and answer and, upon trial hereof, prays that judgment be entered against Defendant, awarding Plaintiff (1) damages in the amount of $443,905.28 for the unamortized portion of the premium Plaintiff paid in direct reliance on Defendant's obligation to fulfill the standard of care required under the Loan Note Guarantee, (2) damages in the amount of $2,437,004.84 for loss of future net interest earnings, (3) punitive damages in an amount to be determined at trial, plus its reasonable and necessary attorney's fees, prejudgment and post-judgment interest, all court costs, and such other and further relief to which Plaintiff may be justly entitled at law or in equity.

DATED this 15th day of September, 2026.

Respectfully submitted,

**GORDON DAVIS JOHNSON SHANE & SNIDER P.C.**
4695 N. Mesa Street
El Paso, Texas 79912
(915) 545-1133
(915) 545-4433 (Fax)
hdavis@eplawyers.com

By: */s/ Harrel L. Davis*
Harrel L. Davis III
State Bar No. 05567560
Attorneys for Plaintiff