**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**

FIDELITY BANK OF TEXAS,

Plaintiff,

v. No. 1:26-cv-03071-JFR-LF

U.S. EAGLE FEDERAL CREDIT UNION,

Defendants.

**DEFENDANT'S MOTION TO DISMISS**

By and through its counsel of record, Defendant U.S. Eagle Federal Credit Union ("**Defendant USE**"), hereby moves the Court to dismiss Plaintiff Fidelity Bank of Texas's ("**Plaintiff FBT**") claims against it on the ground that they do not meet the heightened pleading standard of Fed. R. Civ. P. 9(b). Further, to the extent that any portions of the complaint are not subject to Rule 9(b), they do not state a plausible claim as required by Fed. R. Civ. P. 12(b)(6). Defendant USE assumes that Plaintiff FPT opposes the relief requested.

**Introduction**

In or about December 2023, Defendant USE made a loan to two South Carolina companies ("**Borrowers**") in the amount of $17,550,0000.00 ("**Loan**"). *See* Compl. (Doc. 1) at ¶ 12. The United States Department of Agriculture ("**USDA**") guaranteed repayment of $14,040,000.00 of that amount. *Id.*

In or about February 2024, Plaintiff FBT purchased $5,054,000.00 of the Loan, with repayment of that amount fully guaranteed by the USDA. *Id.* at ¶ 13. The total amount Plaintiff FBT paid for this purchase was $5,668,004.16, which comprised the principal portion of the Loan it acquired, plus an additional premium of $600,210.00. *Id.*

Borrowers thereafter defaulted on the Loan, and the USDA paid on its guarantee. *Id.* at ¶ 14. Plaintiff FBT received full repayment of the principal it was owed on the Loan from this guarantee payment, but it was not reimbursed for the $600,210.00 premium it paid. *Id.* Plaintiff FBT calculates that the unamortized portion of its premium is $443,905.28, and that it would have earned $2,437,004.84 in interest over the life of the Loan. *Id.* at ¶¶ 16, 19.

Plaintiff FBT contends that it is entitled to recover at least that amount from Defendant USE under theories of breach of contract, breach of the duty of good faith and fair dealing, and fraud. All of these theories are premised upon the following allegations by Plaintiff FBT:

- "In 2023, it appears that Defendant [USE] started the process of originating clearly risky and problematic loans, obtaining USDA guarantees on those loans, and then selling them at a premium to third-party lenders in order to raise capital to purchase other banks." *Id.* at ¶ 7.
- "As a part of this scheme, Defendant [USE], after making the risky loans and obtaining the USDA guarantee, would sell a portion of those loans to innocent and unsuspecting third-party lenders in order to bolster its own financial statement. While doing so, Defendant would provide insufficient and/or misleading information regarding the loans being sold." *Id.* at ¶ 9.
- "The USDA guaranteed loans were sold to the innocent third-party lenders at a premium because of the USDA guarantee as well as the perceived quality of the loans being sold." *Id.* at ¶ 10.
- "Since Defendant [USE] was pushing to raise its capital and was offloading the loans (*i.e.*, a pump and dump scheme), via assignments to third parties such as plaintiff

without regard for their quality, Defendant [USE] did not care about the quality of the loans it was originating and selling." *Id.* at ¶ 11.

- "Very shortly after the acquisition, it became clear that the loans were troubled ones. In fact, in August 2024, Defendant's internal documents reflected that there were discussions about problems that existed with the Loan long before a portion of it was sold to Plaintiff." *Id.* at ¶ 15.

- The USDA's guarantee "obligated Defendant [USE] to service the Loan in the same manner as a "reasonably prudent lender would perform in processing or servicing (including liquidation) of its own portfolio of loans that are not guaranteed. Defendant [USE] failed to meet that standard" because it did not timely submit a servicing plan to the USDA, did not timely notify Plaintiff FBT of Borrowers' default, and did not diligently press the Borrowers to cure their default. *Id.* at ¶ 17.

- "Plaintiff believes that Defendant made material misrepresentations and/or omitted material information in connection with the underwriting of the Loan, upon which Plaintiff relied to its detriment in purchasing its interest in the Loan." *Id.*

- "Plaintiff understands that Borrowers had additional non-guaranteed loans with Defendant that are also in workout, raising the issue of whether Defendant permitted or even encouraged the Borrowers to prioritize repayment of non-guaranteed loans." *Id.*

- "Defendant [USE] represented and warranted that the underlying Loan was originated and underwritten in compliance with the requirements of the USDA's OneRD Program and was of a quality that would qualify for a USDA loan guarantee. It was not." *Id.* at ¶ 20.

- "Defendant [USE] breached its contractual obligations … by failing to disclose material issues with the Loan when it assigned a portion of the Loan to Plaintiff." *Id.* at ¶ 21.
- "Defendant [USE] failed to review and underwrite the Loan in accordance with the [USDA's guarantee] and the OneRD Program, including but not limited to performing adequate due diligence on the creditworthiness of the [Borrowers] and the viability of the underlying collateral." *Id.* at ¶ 22.
- "Defendant [USE] failed to service the Loan in accordance with the requirements" of the USDA's guarantee. *Id.* at ¶ 23.
- Defendant [USE] failed to "disclose known loan quality issues prior to the assignment," and failed "to diligently service the Loan[.]" *Id.* at ¶ 24.
- "Defendant [USE] was aware, at the time it made the Loan, that it was of such poor quality that it did not qualify for the USDA's One RD Program. Despite this knowledge, Defendant [USE] marketed the Loan for sale to Plaintiff, representing through the [documents associated with the Loan] and related offering materials that the Loan qualified for the OneRD Program and that the USDA was valid and enforceable. Those representations were false and were made with the intent to induce Plaintiff to purchase its interest in the Loan." *Id.* at ¶ 25.

As explained herein, these vague, generalized allegations of misconduct fall well short of the heightened pleading requirements of Rule 9(b) and in no way state a plausible claim plausible within the meaning of Rule 12(b)(6). The Court should dismiss them accordingly.

**Applicable Legal Standards**

Rule 9(b)

"Normally, a plaintiff need only plead a short and plain statement of the claim showing that the pleader is entitled to relief. Fraud claims, however, must meet more stringent standards. In alleging fraud …, a party must state with particularity the circumstances constituting fraud." *Two Old Hippies, LLC v. Catch the Bus, LLC*, 784 F. Supp. 2d 1200, 1207 (D.N.M. 2011) (citing Rule 9(b)) (internal punctuation and citation omitted). "To survive a motion to dismiss, an allegation of fraud must set forth the time, place, and contents of the false representation, the identity of the party making the false statements, and the consequences thereof." *Id.* This heightened pleading requirement also extends to any cause of action that "contains allegations grounded in fraud." *Id.*

This heightened pleading requirement serves three functions. First, it "protects defendants' reputations from the harm attendant to accusations of fraud or dishonest conduct." *Id.* Second, it "puts defendants on notice of the allegedly fraudulent conduct so they can formulate a defense." *Id.* at 1208. Third, it "prevent[s] plaintiffs from tagging on specious fraud claims to their pleadings in an attempt to induce advantageous settlements or for other ulterior purposes." *Id.*

Rule 12(b)(6)

> We use the *Iqbal/Twombly* standard to determine whether Plaintiffs have stated a plausible claim. In applying this standard, we take Plaintiffs' well-pleaded facts as true, view them in the light most favorable to Plaintiffs, and draw all reasonable inferences from the facts in favor of Plaintiffs. A plausible claim includes facts from which we may reasonably infer Defendant's liability. Allegations that are merely consistent with a defendant's liability stop short of that line.

*Brooks v. Mentor Worldwide LLC*, 985 F.3d 1272, 1281 (10th Cir. 2021) (internal punctuation and citation omitted).

Put another way, "a plaintiff must nudge his claims across the line from conceivable to plausible in order to survive a motion to dismiss. [T]he mere metaphysical possibility that some plaintiff could prove some set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that this plaintiff has a reasonable likelihood of mustering factual support for these claims." 784 F. Supp. 2d at 1207 (internal punctuation and citation omitted). If the allegations in a complaint "are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs have not nudged their claims across the line from conceivable to plausible." *Robbins v. Oklahoma,* 519 F.3d 1242, 1247 (10th Cir. 2008).

"Labels, conclusions, formulaic recitations of elements, and naked assertions" are not considered to be well-pleaded facts, and the plausibility of a complaint must be determined without reference to such matters. 985 F.3d at 1281.

**Argument**

Plaintiff FBT Does Not Meet the Heightened Pleading Requirement of Rule 9(b)

Each of Plaintiff FBT's three causes of action in this matter sounds in fraud, insofar as each alleges that Defendant USE failed to disclose known adverse information regarding the Loan. *See* Am. Compl. at ¶ 21 (alleging Defendant USE breached its contractual obligations "by failing to disclose material issues with the Loan"), ¶ 24 (alleging Defendant USE breached its duty of good faith and fair dealing by "fail[ing] to disclose known loan qualify issues prior to the assignment"); ¶ 25 (alleging Defendant USE engaged in fraud). Plaintiff FBT must therefore meet the heightened standard of Rule 9(b) in pleading each of these causes of action. 784 F. Supp. 2d at 1207. However, Plaintiff FBT's allegations, both generally and with respect to each cause of action, fall well short of that standard.

As to the Loan itself, Plaintiff FBT does not identify any individual associated with Defendant USE who purportedly made any false representations to it about the Loan or Borrowers. Plaintiff FBT does not describe the content of any of these allegedly false representations about the Loan, does not explain why they were false or misleading, and does not explain how Plaintiff FBT relied on any of them. Plaintiff FBT does not allege when, where, or by what means any such false representations were made to it. Plaintiff FBT does not identify the "offering materials" for the Loan that it purportedly relied on or explain how it relied on them in agreeing to purchase a portion of the Loan. Plaintiff FBT does not describe any information which leads it to contend that Borrowers were not creditworthy or that the collateral for the Loan was not "viable." Plaintiff FBT does not identify the "internal documents" of Defendant USE which purportedly indicate discussions about problems with the Loan, state what those problems were, or identify who was involved in those discussions or when they occurred. Nor does Plaintiff FBT provide any details about why it contends the Loan was not reviewed, originated, or underwritten in compliance with USDA standards, despite the fact that it was guaranteed by the USDA.

Plaintiff FBT's generalized allegations of misconduct by Defendant USE are equally deficient. Plaintiff FBT does not identify any information that leads it to believe that Defendant USE allowed Borrowers to "prioritize payment of non-guaranteed loans" or encouraged them to do so. Plaintiff FBT also does not identify any of the "risky and problematic loans" it alleges Defendant USE sold to third parties through a "pump and dump scheme," does not identify any parties to any transactions involving these loans, and does not state when these loans were sold. Nor does Plaintiff FBT explain why any of these "risky and problematic loans" were either risky or problematic, or state what misleading information Defendant USE provided to third parties in connection with them.

In short, Plaintiff FBT's bare-bones complaint exhibits each of the problems that Rule 9(b) was intended to prevent. 784 F. Supp. 2d at 1208. It does not provide Defendant USE with sufficient information about its alleged fraud for it to be able to respond fairly, Defendant USE's reputation is being sullied by local and industry press coverage of Plaintiff FBT's allegations, and Plaintiff FBT has given the Court no reason to conclude that Plaintiff FBT has done anything other than manufacturing a specious fraud claim against Defendant USE out of whole cloth to address an investment loss. The Court should dismiss Plaintiff FBT's complaint accordingly.

Plaintiff FBT's Claims Are Implausible

To the extent that any portions of Plaintiff FBT's causes of action might survive dismissal under Rule 9(b), they would still be implausible and would not withstand dismissal under Rule 12(b)(6). As to Defendant USE's purported misconduct, Plaintiff FBT's complaint is comprised solely of "[l]abels, conclusions, formulaic recitations of elements, and naked assertions," and is devoid of any well-pleaded facts for the reasons stated above. 985 F.3d at 1281. And while Defendant USE categorically denies any wrongdoing, the fact that it is arguably possible that it engaged in the conduct alleged by Plaintiff FBT is not sufficient for its claims to proceed. Plaintiff FBT must instead give the Court reason to believe that it has a reasonable likelihood of mustering factual support for its allegations, and the lack of any meaningful detail in in the complaint is an unmistakable indicator that it does not. 519 F.3d at 1247. The Court should therefore dismiss Plaintiff FBT's claims on this separate basis.

**Conclusion**

WHEREFORE, Defendant USE requests that the Court dismiss this matter pursuant to Rule 9(b), or in the alternative, under Rule 12(b)(6), and that the Court grant Defendant USE such further and additional relief as the Court deems just and appropriate under the circumstances.

Respectfully submitted,

JENNINGS HAUG KELEHER
McLEOD WATERFALL LLP

By: */s/ Ben Feuchter*
Benjamin F. Feuchter
Ryan M. Walters
201 Third St. NW, Suite 1200
Albuquerque, NM 87102
(505) 346-4646
bf@jkwlawyers.com
rmw@jkwlawyers.com
*Attorneys for Defendants*

I hereby certify that on October 22, 2026, I served the foregoing on all parties entitled to notice through the Court's electronic filing system.

By: */s/ Ben Feuchter*
Benjamin F. Feuchter